# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOANN L. KENNEDY, on behalf of herself and all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:18CV230 HEA |
| LTI TRUCKING SERVICES, INC., | ) ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant LTI Trucking Services Inc.'s Motion for Summary Judgment [Doc. No. 38]. Plaintiff filed her Response in Opposition on July 23, 2019 [Doc. No. 43]. On August 2, 2019 Defendant filed its Reply to Response [Doc. No. 48]. For reasons set forth below, the Motion to for Summary Judgment is granted.

### Facts and Background

Plaintiff Joann L. Kennedy is a truck driver and a former employee of Defendant LTI Trucking Services. Defendant is an interstate freight motor carrier that coordinates the movement of freight for its customers.

From May 2015 to February 2016, Plaintiff was an employee of LTI. Plaintiff re-joined LTI as an employee in October 2016 and, in November 2016, became a Lease Owner Operator with LTI, having signed an Independent

Contractor Agreement ("ICA") and Equipment Lease Agreement ("Lease"). Plaintiff worked as a Lease Owner Operator for a short time before transitioning back to employee status with Defendant.

Plaintiff alleges that Both as a Lease Owner and as an official employee of LTI, Defendant failed to pay her minimum wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206 *et seq.* (Count I) and Missouri's Labor and Industrial Relations laws, Mo. Rev. Stat. § 290.500-290.530 (Count II). Specifically, Plaintiff claims that under United States Department of Labor ("DOL") regulations, she was "on duty" for 24 hours a day in a seven-day period, and that DOL regulations dictate that 16 of those 24 hours (or, 112 hours in the seven-day period) must be paid. Plaintiff alleges that when her total pay for the seven days in question is divided by 112, her hourly rate comes to $7.14 per hour, which is less than the both the federal and Missouri minimum wages. She also claims that Defendant did not compensate her for time or miles driven to mandatory clean-ups of her truck, or for time she spent at docks waiting while her truck was offloaded.

Plaintiff also alleges that the ICA was unconscionable under Missouri statutory and common law (Count III) because Defendants misrepresented the nature of the ICA, and because the ICA was "one-sided and unduly harsh." In support of this claim, Plaintiff states that the ICA was an adhesion contract, that it

was unilaterally terminable by Defendant and imposed severe financial consequences upon Plaintiff for termination, that it forced Plaintiff's continued employment with Defendant, and that it shifted business expenses and risks to Plaintiff.

Plaintiff alleges that Defendant was unjustly enriched by its unconscionable agreements (Count IV) and seeks declaratory judgment (Count V). Plaintiff also makes class allegations with respect to her claims. Because summary judgment will be entered as to Defendant as to each Count, the class allegations are moot.

## Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn*., 490 F.3d 648, 654 (8th Cir. 2007); *see* Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id*. "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal

quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks and citation omitted). Mere conjecture and speculation is unacceptable.

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). The nonmoving party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor. *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). It is axiomatic that "[m]ere allegations,

unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197 at *3 (8th Cir. 2008).

## Discussion

**Counts I and II – Minimum wage claims**

Counts I and II of Plaintiff's Complaint state claims based on the FLSA and the Missouri Minimum Wage Law ("MMWL"). The MMWL is interpreted in accordance with the FLSA and the regulations promulgated thereunder; the following discussion applies fully to both the FLSA and MMWL claims. Mo. Rev. Stat. § 290.505(4); *Tolentino v. Starwood Hotels & Resorts Worldwide, Inc.*, 437 S.W.3d 754, 757 n.3 (Mo. banc 2014).

"To establish a violation of the minimum wage requirements of the FLSA, a plaintiff . . . must demonstrate that [s]he was engaged in compensable activity within the meaning of the statute and that the wages received for that activity, if any, were below the statutory minimum wage." *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 355 (8th Cir.1986). The meaning of compensable activity was summarized by the Eighth Circuit as follows:

> [A]n employee's time is "work" for the purposes of the FLSA if it is spent "predominantly for the benefit of the employer." *Armour [& Co. v. Wantock],* 323 U.S. [126,] 133[]. The [Supreme] Court noted that in some such cases "facts may show that the employee waited to be engaged" and therefore was not working. *Skidmore [v. Swift & Co.]*, 323 U.S. [134,] 137–38[]. The Court stressed that the lower courts should take a "practical approach based on the realities of each case...." *Armour,* 323 U.S. at 133, 65 S.Ct. 165.

*Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir. 2001) (original alterations omitted).  Whether some activity is compensable is case dependent, and courts must rely on Department of Labor regulations and case law, when applicable, in making its determination.  *Id.*

Plaintiff alleges minimum wage violations based on the theory that she was "'on duty' (per United States Department of Labor Regulations) continually for days and weeks on end," and therefore, 16 of the 24 hours per day she was purportedly on-duty must be compensated as work time.  Plaintiff claims that she worked in excess of 16 hours a day at the required tasks of:

> (1) driv[ing] the truck; (2) wait[ing] for cargo to be loaded and unloaded while in the truck or its immediate vicinity; (3) fuel[ing] up the truck and perform[ing] routine maintenance to same; (4) remain[ing] in the vicinity of the truck to help protect Defendant and its customers' property; and (5) remain[ing] inside the truck when stopped to log time in the sleeper berth and to help protect Defendant and its customers' property.

Plaintiff's minimum wage claims are based on the week ending December 4, 2015.

Plaintiff claims she "was on the road for Defendant seven days that week and

spent, according to DOL regulation, a total of 112 hours 'on duty.'" She alleges she received $800.00 in gross pay for that week, resulting in an average hourly wage of $7.14 – less than the federal minimum wage of $7.25 and the 2015 Missouri minimum wage of $7.65.

Defendant argues that Plaintiff is not entitled to a presumption that she worked 24-hour days, that she worked no more than 14 hours per day, and that her off-duty time is not compensable. Plaintiff responds that even if the Court does not find that over-the-road truck drivers are presumptively on duty 24 hours or more, a genuine issue of fact exists as to whether Plaintiff was ever completely relieved from duty.

**Are over-the-road truck drivers presumed to be on continuous duty?**

"Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities." 29 C.F.R. § 785.20. Plaintiff argues that as an over-the-road truck driver, she is presumptively required to be on-duty for 24 hours or more, and her compensable time should be calculated in accordance with 29 C.F.R. § 785.22(a), which states:

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied

agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

In *Petrone v. Werner Enterprises, Inc.*, the District Court in Nebraska performed a quite thorough analysis of the applicable regulations and law surrounding over-the-road truck drivers' sleeping time. No. 8:11CV401, 2017 WL 510884 (D. Neb. Feb. 2, 2017). Chief Judge Camp looked to the FLSA regulations that "contain specific guidance regarding compensation for employees during periods of travel . . . §§ 785.35 to 785.41." Section 785.41, which applies to truck drivers specifically, states:

> Any work which an employee is required to perform while traveling must, of course, be counted as hours worked. An employee who drives a truck, bus, automobile, boat or airplane, or an employee who is required to ride therein as an assistant or helper, is working while riding, except during bona fide meal periods or when [s]he is permitted to sleep in adequate facilities furnished by the employer.

Reading the regulations together and in the context of the overall regulatory scheme, Chief Judge Camp reasoned that "under the plain language of the regulatory scheme, § 785.22 limits non-compensable sleeper berth time for truck drivers and their assistants to 8 hours in a 24-hour cycle only where it can be shown that the truck driver or assistant was *continuously on duty*." *Petrone*, 2017 WL 510884, at *6 (emphasis added). Accordingly, "time truck drivers and their assistants spend in truck sleeper berths is presumed to be non-compensable." *Id.* at *10. This Court agrees with the interpretation of the District Court in Nebraska.

Plaintiff is not entitled to the presumption that her sleeper berth time was compensable.

**Was Plaintiff continuously on duty?**

Finding no presumption of continuous duty for over-the-road truck drivers, the Court examines Plaintiff's specific situation to determine whether a genuine issue exists as to continuous duty. After a review of the undisputed material facts, as discussed in detail below, the Court finds that Plaintiff has failed to substantiate her allegations that she was continuously on-duty.

"The rules governing 'duty of 24 hours or more' (see 29 CFR 785.22) are applicable where, from all the conditions of employment, including the understanding of the parties, it is clear that the employee is employed to wait rather than waiting to be employed." U.S. DEP'T OF LABOR, WAGE AND HOUR DIV., FIELD OPERATIONS HANDBOOK at 4, (accessed September 11, 2019), *available at* http://www.dol.gov/whd/FOH/FOH_Ch31.pdf. According to the DOL, factors suggesting that an employee is on duty for 24 hours or more include:

> (1) the employee has no regular schedule of hours, or a schedule in name only, and is required to perform work on a helter-skelter basis at any time during the day or night; or
>
> (2) the employee has a regular schedule of hours but the unscheduled periods are so cut through with frequent work calls that this time is not his or her own.

*Id*.  Under a section titled "Hours worked by truck drivers, including team drivers"

the DOL provides the following guidance regarding "continuous tours of duty"

(i.e. tours of greater than 48 hours):

> As indicated in 29 CFR 785.12 -.16, waiting or layover time will be considered off-duty time and not part of the employee's hours of work if the employee is completely relieved of all duties and responsibilities, is permitted to leave the truck or temporary station to go anywhere, knows in advance that work will not resume until a specified time, and the period of layover is of sufficient length to be used effectively for the employee's own purposes. . . . Whether or not a continuous tour of duty greater than 24 hours is interrupted by a waiting or layover time is a question of fact.

*Id.* at 6.

An employee is "off-duty," and her time not compensable, when she is

completely relieved from duty for a period of time that is long enough to enable

her to use the time effectively for her own purposes.  29 C.F.R. § 785.16(a).  To

determine whether an employee is on- or off-duty, the Court considers the

following:

> [An employee] is not completely relieved from duty and cannot use the time effectively for [her] own purposes unless [s]he is definitely told in advance that [s]he may leave the job and that [s]he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable [her[ to use the time effectively for [her] own purposes depends upon all of the facts and circumstances of the case.

Id.  Section 785.16(b) gives truck-driver-specific examples:

A truck driver who has to wait at or near the job site for goods to be loaded is working during the loading period. If the driver reaches [her] destination and while awaiting the return trip is required to take care of [her] employer's property, [s]he is also working while waiting. In both cases the employee is engaged to wait. Waiting is an integral part of the job. On the other hand, for example, if the truck driver is sent from Washington, DC to New York City, leaving at 6 a.m. and arriving at 12 noon, and is completely and specifically relieved from all duty until 6 p.m. when [s]he again goes on duty for the return trip the idle time is not working time. [She] is waiting to be engaged.

The Department of Transportation's Federal Motor Carrier Safety Regulations ("FMCSR") Part 395 ("Hours of Service Rules") dictate the amount of on-duty time a driver can log per day. The Hours of Service Rules limit a driver's on-duty time to 14 hours per day or 70 hours in any eight-day period. 49 CFR § 395. The Hours of Service Rules also require a driver to spend 10 consecutive hours off-duty and/or in the sleeper berth before starting a 14-hour work period. A driver must spend 34 consecutive hours off-duty and/or in the sleeper berth before she can "restart" her 70-hour period. The Hours of Service Rules dictate four duty statuses into which commercial drivers must classify and record their time: (1) Off duty; (2) Sleeper berth; (3) Driving; (4) On-duty not driving. 49 CFR § 395.8.

Although the Hours of Service Rules are not tantamount to DOL regulations for FLSA purposes, they are nonetheless relevant to Plaintiff's wage claims, as Plaintiff testified that she always recorded her time accurately and in accordance with the Hours of Service Rules. There is no question that the time Plaintiff

categorized under DOT statuses "driving" and "on-duty not driving" are compensable hours; the determinative issue is whether the hours Plaintiff recorded as "off-duty" and "sleeper berth" are compensable under the FLSA and DOL regulations.

The claim that she was on duty during sleeper berth and off-duty relies on three contentions: (1) drivers were responsible for keeping the refrigeration unit fueled, monitoring the temperature of refrigeration units every 4 hours, and would be called by a fleet manager at any time if the refrigerator unit exceeded a certain temperature variance; (2) she was not free to go home after a shift, but was required to request "home time" at least 10 days in advance; (3) she spent some "sleeper berth" time waiting for loading and unloading.

Defendant argues that by logging time as off-duty and sleeper berth, Plaintiff was attesting that she was completely relieved from work. Plaintiff never logged more than 14 on-duty hours in a day, and testified that most hours she could recall working in a day including on-duty, not driving time was 14 hours. According to Defendant, these facts show that Plaintiff was "off-duty" for 10 hours a day or more. As to whether "off-duty" really meant Plaintiff was completely relieved from work duties, Defendant points to Plaintiff's testimony that she was free to engage in personal activities during off-duty and sleeper berth time. For instance, Plaintiff testified that anytime she was logged as sleeper berth, she was in the bunk

area, and stated that "You can do anything personally you want to in your sleeper berth area." During 34-hour restart periods, Plaintiff testified that she was relieved of duty. When asked how often she did personal errands with her truck, Plaintiff replied "Undetermined amount because the ten-hour consecutive [off-duty time] is *your time off*." Plaintiff testified that on 10- and 34-hour breaks, she would get supplies, go to restaurants, go to casinos, and sometimes rent a car to run errands. Plaintiff stated that while on off-duty and sleeper berth status in her truck, she would read books, use a tablet, use social media. She also testified that upon return from a 34-hour break, she would be prompted by the onboard computer as to whether she wanted to take credit for those hours. Plaintiff explained that "you just say no because you were gone… typically because you were off the truck for 34 hours, you say no, those are not my hours." Plaintiff stated that any time she was doing company, she had to be listed as on-duty. When she was logged off-duty, Plaintiff testified that she was not required to stay with her equipment if it was secured.

The undisputed evidence completely undermines Plaintiff's temperature check argument. Plaintiff presents no evidence that she ever actually checked the temperature during her sleeper berth or off-duty time or received calls from a fleet manager during her sleeper berth or off-duty time. Nor does she claim that she was ever unable to get 5 hours of sleep. Cf. 29 C.F.R. §785.22(b) ("If the sleeping

13

period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get [at least 5 hours'] sleep, the entire period must be counted.")  Plaintiff's generic arguments that company policies required around-the-clock monitoring, without specific facts that Plaintiff's off-duty or sleeper berth time was ever actually interrupted are merely self-serving allegations insufficient to survive a motion for summary judgment. The Court reiterates for the sake of clarity the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'"  *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)).

Plaintiff offers no law or regulation in support of her argument that she was continuously on-duty because "LTI drivers were not free to go home at the end of the day, or week, or month" and were required to request "home time" at least 10 days in advance.  There is no evidence that Defendant prohibited drivers from visiting home during a regular break.  Even if there was, the relevance of this argument is unclear.

Finally, Plaintiff argues that some of the time she logged as sleeper berth or off-duty is compensable because she was waiting for trailers to be loaded and

unloaded.  The Court does not disagree with Plaintiff's contention that time spent at or near the shipper or receiver while the trailer is being loaded and unloaded is generally compensable.  *See* 29 C.F.R. 785.16(b).  However, Plaintiff provides nothing substantive regarding  how many hours she was purportedly waiting for loading and unloading without pay.  Plaintiff's minimum wage claims for the week ending December 4, 2015 rely on the assumption that she was working continuously 24 hours a day, seven days a week, and therefore worked 112 hours. Plaintiff did not provide any alternative arguments to support her minimum wage claims, thus her failure to identify specific situations in which she was waiting during loading or unloading makes it impossible for the Court to conclude that there is a genuine issue as to how many hours in the week ending December 4 were compensable.

There is no genuine issue of fact as to whether Plaintiff was continuously on duty.  She was not, as a matter of law.  Defendant is entitled to judgment on Plaintiff's minimum wage claims.

**Unconscionability**

As to Counts III and IV of her Complaint, Plaintiff alleges that the Lease and ICA (collectively, "Agreements") that she entered into with Defendant were unconscionable and voidable, and she is entitled to damages for restitution and unjust enrichment.

"Unconscionability has two aspects: procedural unconscionability and substantive unconscionability." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. banc 2006). "Procedural unconscionability deals with the formalities of making the contract, while substantive unconscionability deals with the terms of the contract itself." *Id.* "Procedural unconscionability focuses on such things as high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process." *Id.* "Substantive unconscionability means an undue harshness in the contract terms." *Id.* Missouri law requires that for a contract to be voided for unconscionability, it must be both procedurally and substantively unconscionable. *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 857 (8th Cir. 2008) (citing *Kansas City Urology, P.A. v. United Healthcare Services*, 261 S.W.3d 7, 14–15 (Mo. Ct. App. 2008)).

**Procedural Unconscionability**

Plaintiff's memorandum in opposition to summary judgment offers two arguments for procedural unconscionability: (1) the "form ICA" made "misrepresentations" about her ability to hire employee drivers and provide trucking services to other companies, and (2) unequal bargaining power between Plaintiff and Defendant.[1]

---

[1] In her Complaint, Plaintiff also claims that the ICA is a contract of adhesion but fails to elaborate on that allegation in her memo in opposition. Because Missouri courts do not "view adhesion contracts as inherently sinister and automatically unenforceable," *Midwest Div.-*

Plaintiff claims that there is a fact dispute as to "whether misrepresentations were used to induce drivers to enter into those contracts." However, she neither claims that she was prevented from reading the Agreements nor does she claim to have been tricked by unreadable fine print. She does not allege that Defendant made any independent representations about hiring employees and working for other companies that unfairly induced her into entering into the Agreements. In fact, Plaintiff testified that she entered into the Agreements because she wanted to make better money by getting better freight lines. There is no evidence that any fraud or coercion on behalf of Defendant influenced her decision making.

Plaintiff does not elaborate on her "unequal bargaining power" argument. In any case, whether the inequality she alleges is based on the parties' relative status as employer-employee or corporation-individual, "[i]t is not enough to assert that one party was less sophisticated than the other." *Sander v. Alexander Richardson Investments*, 334 F.3d 712, 720 (8th Cir. 2003). "There must be some evidence that the party holding the superior bargaining power exerted that power in overreaching the less sophisticated party by, for example, engaging in fraud or coercion or by insisting on an unconscionable clause." *Id.* There is no evidence or even allegation of overreach here.

---

*OPRMC, LLC v. Dep't of Soc. Servs., Div. of Med. Servs.*, 241 S.W.3d 371, 379 (Mo. App. W.D. 2007), Plaintiff's unadorned allegation fails to raise any triable issue.

Plaintiff's argument for procedural unconscionability rests on Defendant's conduct while the parties were bound by the contract. Procedural unconscionability focuses on the contract formation process, not on the actions of the parties after the contract is signed. The proper action for a party's failure to hold up their end of a bargain is breach of contract, not unconscionability. Plaintiff's complaints about Defendant's failure to act in accordance with the terms of the Agreements are irrelevant here.

**Substantive Unconscionability**

Plaintiff claims that there is a genuine issue of fact as to whether the terms of the Agreements were "so one-sided that the whole agreement should be set aside and declared unconscionable." The terms that Plaintiff cites as unconscionable are: Defendant's right to change mileage rates at its sole discretion, an acceleration clause exercised at Defendant's sole discretion, the "Events of Default" that all applied to Plaintiff and not to Defendant, an "Event of Default" where either party terminated the ICA and "Lessee fails within five (5) days thereafter to enter into a new Contractor Agreement with another Operating Carrier acceptable to Lessor in the exercise of Lessor's sole discretion," and the absence of a penalty against Defendant if Defendant terminated the ICA or Lease.[2]

---

[2] None of the complained-of terms were acted on by Defendant.

Plaintiff neither offers authority in support of the unconscionability of the terms , nor does she elaborate on the undue harshness they purportedly impose. Rather, she seems to rest her hopes for overcoming summary judgment on a single case in which the Eighth Circuit reversed a summary judgment ruling for a trial on the "moral issue of unconscionability." *Turner v. Ferguson*, 149 F.3d 821, 825 (8th Cir. 1998). *Turner* did not concern contractual unconscionability. *Turner* involved a breach of fiduciary duty and a question of whether a general partner profited unconscionably from a land transaction that involved self-dealing. Reasonable people could differ as to whether the partner ignored a competing offer so that he could acquire a higher stake in the land through his own development company, necessitating a trial on that issue. Unconscionable profit, as an element of a breach of fiduciary duty action, is wholly distinct from contractual unconscionability. Plaintiff's reliance on *Turner* is inapt.

Plaintiff's bare assertions that the Agreements were so one-sided and unduly harsh as to render them void are insufficient to overcome summary judgment. A contract is not unconscionable simply because it confers some right or obligation on one party but not the other. *See State ex rel. Vincent*, 194 S.W.3d at 859 (labelling the "mutuality of obligation" requirement as "a dead letter in contract law"). "As long as the requirement of consideration is met, mutuality of obligation is present, even if one party is more obligated than the other." *Id.* (quotations

omitted).   It is not disputed that Plaintiff and Defendant exchanged consideration in this transaction.

Plaintiff offers no evidence that the complained-of terms were unduly oppressive, and mere unilaterality a right or obligation in contract, without more, does not rise to unconscionability.  Summary judgment as to Plaintiff's contract claims will be granted in favor of Defendant.

## Conclusion

For the reasons stated above, Defendant is entitled to summary judgement on Plaintiff's minimum wage and contract claims (Counts I-IV).  Summary judgment is also granted for Defendant as to Plaintiff's request for declaratory judgment (Count V).  Plaintiff's pending Motion to Compel (Doc. No. 50) is denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 38] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel [Doc. No. 50] is **DENIED as moot**.

A separate judgment in accordance with this Opinion, Memorandum, and

Order is entered this same date.

Dated this 13th day of September, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE